IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

GEORGE HAGUE, AS TRUSTEE
OF THE HAGUE FAMILY
IRREVOCABLE TRUST, et al.,

Plaintiffs,

v.

WELLS FARGO BANK, N.A., et al.,

Defendants.

NO. C11-02366 TEH

ORDER GRANTING MOTION
TO DISMISS, DENYING
MOTION TO STRIKE AND
FINDING CAUSE WHY
SANCTIONS SHOULD NOT BE
IMPOSED

This matter came before the Court on November 28, 2011, on the motions of Defendant Wells Fargo Bank ("Wells Fargo"), who moved to dismiss entirely or strike portions of the complaint. For the reasons set forth below, the motion to dismiss is GRANTED, the motion to strike DENIED, and, regarding this Court's order that Plaintiffs' counsel show cause why he should not be sanctioned, good cause is deemed shown.

**BACKGROUND**

Plaintiffs George and Nancy Hague ("Plaintiffs" or "the Hagues") borrowed $520,000 from World Savings Bank, FSB ("World Savings"), in 2007. The loan was memorialized by a promissory note and secured by a deed of trust recorded against the Hagues' home at 17656 Hillside Court, Castro Valley, California, where Mr. Hague has lived in since 1969.[1] The deed of trust named World Savings as the beneficiary and Golden West Savings Association Service Co. ("Golden West") as trustee.

---

[1] The Court takes judicial notice of the deed of trust and other documents recorded in connection with Plaintiffs' loan. They are true and correct copies of official public records of the Alameda County Recorder's Office, and their authenticity is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. See Fed. R. Evid. 201(b). Plaintiffs do not object to the Court taking judicial notice of these or any other documents submitted by Wells Fargo.

World Savings changed its name to Wachovia Mortgage, FSB, on December 31, 2007.[2] It then changed its name to Wells Fargo Bank Southwest, N.A., before merging with Wells Fargo Bank, N.A., in November 2009. The bank is currently known as Wachovia Mortgage, a division of Wells Fargo Bank, N.A. The Court will refer to this entity, as it exists today, as "Wells Fargo."

Acting as an agent for Wells Fargo, NDEX West, LLC ("NDEX"), recorded a notice of default against the Hagues' home on January 4, 2011.[3] On February 25, 2011, NDEx was substituted as trustee. NDEX recorded a notice of trustee's sale on April 1, 2011. Plaintiffs filed suit against Wells Fargo and NDEx in Alameda County Superior Court on April 24, 2011, seeking declaratory and injunctive relief.

The Hagues' Complaint states that the Hagues have never been provided with evidence of the transfer of the full and unencumbered interest in the actual mortgage loan (either as a Note or Deed of Trust), and devotes a great deal of the factual portion of the complaint to World Savings Bank's use of Real Estate Mortgage Investment Conduits ("REMICs") to securitize its mortgage loans into mortgage-backed securities ("MBSs").

The cumulative thrust of these factual allegations seems to be an assertion by the Hagues that action by entities other than Wells Fargo without proof of assignment operates to invalidate the present attempt to foreclose on the property, as the party seeking to institute foreclosure has not demonstrated legal authority to do so. Essentially, they seem to be claiming that the loan was no longer held by World Savings when Wells Fargo bought World Savings's loans. Additionally, they assert that they received the notice that NDEX had been

---

[2] The Court grants Wells Fargo's request for judicial notice of Exhibits B through F, which establish the history of World Savings. The Court finds that these are true and correct copies of documents reflecting official acts of the executive branch of the United States, and that they are judicially noticeable pursuant to Rule 201(b)(2) of the Federal Rules of Evidence.

[3] The Complaint is silent as to whether and when the Hagues stopped paying their mortgage. However, the Notice of Default indicates that the principal and interest became due on August 1, 2010.

2

substituted for Golden West after January 20th, 2011, having already received the Notice of Default around January 4th, on which NDEX was listed as the trustee.

At the end of March, 2011, the Hagues received notice of a "Trustee's Sale" (foreclosure) of the home, scheduled to take place at the end of April, 2011. The Hagues sued Wells Fargo and NDEX in Alameda County Superior Court on April 24, 2011, seeking declaratory and injunctive relief.

Wells Fargo removed the case to this Court, and on May 20, 2011, Wells Fargo filed a motion to dismiss. A few days later, on May 24, 2011, the Hagues filed an ex parte application for a temporary restraining order and preliminary injunction to halt a trustee's sale scheduled for May 26, 2011. Nancy Hague submitted an affidavit in support of the injunction stating that if the couple were forced to move, it would be disastrous for her husband's health. The Court granted a temporary restraining order and issued an order to show cause as to why a preliminary injunction should not issue. The Court denied the preliminary injunction and the Hagues appealed. The Hagues asked the Court to enjoin the sale of their home pending appeal, and in light of the fact that the Hagues had reformulated their arguments, the Court granted the injunction halting any sale of their home.

Wells Fargo brought a motion to dismiss on May 20, 2011, and this Court granted the motion, with leave to amend, on August 2, 2011. The amended complaint was filed on September 19, 2011, and Wells Fargo now moves to dismiss the amended complaint, as well as to strike portions of the amended complaint.

Furthermore, due to counsel for the Plaintiffs' failure to appear at the most recent Case Management Conference, this Court issued an Order to show cause why monetary sanctions should not be imposed.

**LEGAL STANDARD**

Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) when a plaintiff's allegations fail "to state a claim upon which relief can be granted." In ruling on a motion to dismiss, the Court must "accept all material allegations of fact as true and construe

3

the complaint in a light most favorable to the non-moving party." *Vasquez v. L.A. County*, 487 F.3d 1246, 1249 (9th Cir. 2007). Courts are not, however, "bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 129 S. Ct. at 1949-50.

A Rule 12(b)(6) dismissal "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility does not equate to probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Dismissal of claims that fail to meet this standard should be with leave to amend unless it is clear that amendment could not possibly cure the complaint's deficiencies. *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1296 (9th Cir. 1998).

## DISCUSSION

*Motion to Dismiss*

The Hagues bring four claims against Wells Fargo: declaratory relief, financial elder abuse, fraud, and constructive fraud. Wells Fargo moves to dismiss all claims. They claim that the Home Owner's Loan Act, 12 U.S.C. § 1461, *et seq*. ("HOLA") preempts all claims. They argue that the claim for declaratory relief is undermined by judicially noticeable documents proving Wells Fargo's ownership of the note, the failure of plaintiffs to tender their outstanding debt, and, furthermore, that ownership of the note is not required to proceed with foreclosure. The remaining claims (elder abuse, fraud, and constructive fraud), according to the Defendant, are defective due to insufficiency of the pleadings (lacking specificity and required elements of each cause of action), and are furthermore both time-barred and barred by the class action settlement in *Mandrigues v. World Savings, Inc.*, No. 07-4497, 2008 U.S. Dist. LEXIS 31810, 2008 WL 1701948 (N.D.Cal. Apr. 9, 2008).

4

1. Preemption Under HOLA

Wells Fargo argues that Plaintiffs' state claims are preempted by HOLA and its implementing regulations, including 12 C.F.R. § 560.[4] Congress enacted HOLA "to charter savings associations under federal law, at a time when record numbers of homes were in default and a staggering number of state-chartered savings associations were insolvent." *Silvas v. E\*Trade Mortg. Corp.*, 514 F.3d 1001, 1004 (9th Cir. 2008). The court in *Silvas* explained further:

> HOLA was designed to restore public confidence by creating a nationwide system of federal savings and loan associations to be centrally regulated according to nationwide best practices. We have described HOLA and its following agency regulations as a radical and comprehensive response to the inadequacies of the existing state system, and so pervasive as to leave no room for state regulatory control. [B]ecause there has been a history of significant federal presence in national banking, the presumption against preemption of state law is inapplicable.

514 F.3d at 1004-05 (quotations and citations omitted) (alteration in original).

Congress, through HOLA, gave the Office of Thrift Supervision ("OTS") "broad authority to issue regulations governing thrifts." *Id.* at 1005 (citing 12 U.S.C. § 1464). One of the regulations issued by OTS, 12 U.S.C. § 560.2 ("§ 560.2"), deals with preemption, and the Ninth Circuit has held that this regulation has no less preemptive effect than HOLA itself. *Id.* The regulation has three main sections – 560.2(a), 560.2(b), and 560.2(c). Section 560.2(a) provides that

> OTS hereby occupies the entire field of lending regulation for federal savings associations. OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation.

---

[4] Wells Fargo contends that HOLA applies here because World Savings, which made the loan to the Hagues and later merged into Wells Fargo, was a federally chartered savings bank organized and operating under HOLA. Other courts have applied HOLA where the original lender was a federal savings bank that later merged into a national savings association such as Wells Fargo. *See, e.g.*, *DeLeon v. Wells Fargo Bank, N.A.*, 729 F. Supp. 2d 1119, 1126 (N.D. Cal. 2010); *Sato v. Wachovia Mortg., FSB*, No. 11-00810 EJD, 2011 U.S. Dist. LEXIS 75418, at \*14 (N.D. Cal. July 13, 2011); *Haggarty v. Wells Fargo Bank, N.A.*, No. C 10-02416 CRB, 2011 U.S. Dist. LEXIS 9962, at \*10-11 (N.D. Cal. Feb. 2, 2011); *Guerrero v. Wells Fargo Bank, N.A.*, No. CV 10-5095-VBF(AJWx), 2010 U.S. Dist. LEXIS 96261, at \*8-9 (C.D. Cal. Sep. 14, 2010). The Hagues make no argument to the contrary.

5

> Accordingly, federal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities, except to the extent provided in paragraph (c) of this section . . . .

12 C.F.R. § 560.2(a). Section 560.2(b) offers "illustrative examples" of state laws preempted by HOLA, and § 560.2(c) does the same for state laws generally not preempted. 12 C.F.R. §§ 560.2(b), (c). Of the specific types of state laws that are preempted under § 560.2(b), Wells Fargo argues that one is applicable to this case. Section 560.2(b)(10) states that "the types of state laws preempted by [§ 560.2(a)] of this section include, without limitation, state laws purporting to impose requirements regarding . . . [p]rocessing, origination, servicing, sale or purchase of, or investment or participation in, mortgages."

Section 560.2(c) provides that

> [s]tate laws of the following types are not preempted to the extent that they only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of [§ 560.2(a)]:
>
> (1) Contract and commercial law;
>
> (2) Real property law;
>
> (3) Homestead laws specified in 12 U.S.C. 1462a(f);
>
> (4) Tort law;
>
> (5) Criminal law; and
>
> (6) Any other law that OTS, upon review, finds:
>
> (I) Furthers a vital state interest; and
>
> (ii) Either has only an incidental effect on lending operations or is not otherwise contrary to the purposes expressed in paragraph (a) of this section.

12. C.F.R. 560.2(c).

Wells Fargo argues that 560.2(b) preempts the Hagues' claims. Under *Winding v. Cal-Western Reconveyance Corp.*, 2011 WL 221321, *11-12 (E.D. Cal. Jan. 24, 2011), claims arising from the transfer of negotiable instruments fall into the "sale or purchase"

6

1  provision of section 560.2, making claims of misconduct arising from the transfer of such
2  instruments in a foreclosure proceeding preempted by HOLA.

*Ahmed v. Wells Fargo Bank & Co.*, 2011 WL 1751415 (N.D. Cal. May 9, 2011), a recent case in this district, bears striking similarity to the present matter. In *Ahmed*, there was a substitution of trustee and a notice of foreclosure within an extremely brief period of time, as here, and, also as here, the new trustee was NDEX. *Ahmed*, 2011 WL 1751415 at *1. Like the Hagues, the plaintiff in that case alleged numerous claims, and sought to invalidate the foreclosure as defective based on the defendants' non-possession of the promissory note and the use of NDEX as substituted trustee. *Ahmed*, 2011 WL 1751415 at *1, *3.

The court found that the claims based on defects in the procedure used to foreclose the property were preempted by HOLA:

> Reading the complaint as a whole, the Court concludes that these causes of action are preempted by HOLA. These claims are predicated upon alleged improprieties in the foreclosure procedure used by defendants and therefore affect lending because they involve the "processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages," as defined in 12 C.F.R. § 560.2(b)(10). Under *Silvas*, this raises a presumption that the claim is preempted, which can be overcome only if it can be clearly shown that the claim fits within the confines of paragraph (c). Plaintiff has not done so. Accordingly, plaintiff's first, third, fifth and sixth causes of action are preempted by HOLA.

*Ahmed,* 2011 WL 1751415 at *4.

Here, the first claim, which requests declaratory relief, is clearly within the bounds of the above holdings. The fact that the Hagues challenge the securitization of the Hagues' mortgage would seem to fall squarely within § 560.2(b)(10)'s specific preemption of state claims that deal with "investment" in mortgages. Thus no broad interpretation of § 560.2(b)(10) is at issue here.

Furthermore, REMIC securitization (as alleged by the Hagues) does not actually remove the property interest of the party assigning the note–the purchase of the note by entities which sell securities (i.e. securitization of the note) does not alter the Note. *Wadhwa v. Aurora Loan Services, LLC. et. al.*, 2011 WL 2681483 at *4-5 (N.D. Cal. July 8, 2011). Therefore, HOLA preempts the first claim for declaratory relief.

7

1    The remaining claims, however, are not subject to HOLA preemption.  Though the
2 Defendant argues that all claims originate from the lending practices of Wells Fargo and are
3 therefore preempted, the nature of the claims–elder abuse and both actual and constructive
4 fraud–are not claims which arise from the lending practices of the bank, but rather "arise
5 from a more general duty not to misrepresent material facts, and therefore do not necessarily
6 regulate lending activity." *Becker v. Wells Fargo Bank, N.A.*, 2011 WL 1103439 at *8-9
7 (E.D. Cal. March 22, 2011) (internal quotations omitted).  Here, the conduct ostensibly
8 underlying all three claims was a knowing, intentional deception of the Hagues by the bank
9 or its agents, who knew the Hagues wanted a 30-year fixed-rate mortgage but nonetheless
10 signed them up for the pick-a-payment loan.  This is a misrepresentation of what product the
11 Hagues were being sold, not a flawed disclosure of what the terms and conditions of the
12 product were–in other words, the "plaintiff's claim relies on the general duty not to
13 misrepresent material facts" and "application of the law does not regulate lending activity",
14 therefore the claims should not be preempted. *DeLeon v. Wells Fargo Bank, N.A.*, 2011 WL
15 311376 at *6 (N.D.Cal. Jan.28, 2011), *see also Ahmed*, 2011 WL 1751415 at *4.

16    2. Tender

17    Tender is not required in this case, as the foreclosure at issue has not yet occurred (see
18 *Silva-Pearson v. BAC Home Loans Servicing, LP*, No. 11-01491, 2011 U.S. Dist. LEXIS
19 71639 (N.D. Cal. July 5, 2011): "Defendants cite no cases that require a plaintiff to plead
20 tender or the ability to tender in order to have standing to" challenge an impending
21 foreclosure) and it would, furthermore, be significantly inequitable to impose a requirement
22 of tender in this case ("if the . . . action attacks the validity of the underlying debt, a tender is
23 not required since it would constitute an affirmation of the debt." *Onofrio v. Rice*, 55 Cal.
24 App. 4th 413, 424 (1997); *see also Dimock v. Emerald Properties*, 81 Cal. App. 4th 868,
25 876-78 (2000)).

26    3. Note Ownership And Substitution Of Trustee

27    As previously determined in this Court's Order of August 2, 2011, Wells Fargo and
28 World Savings are one and the same, there has simply been a change of name, and any claim

8

the Hagues could raise against World Savings they may raise against Wells Fargo (and any claim that could not be raised against World Savings can similarly not be raised against Wells Fargo).

Insofar as Plaintiffs demand production of the note as proof of Wells Fargo's ownership interest, "[p]roduction of the original note is not required to proceed with a non-judicial foreclosure." *Hafiz v. Greenpoint Mortgage Funding, Inc.*, 652 F. Supp. 2d 1039, 1043 (N.D. Cal. 2009) (quoting *Pagtalunan v. Reunion Mortgage Inc.*, 2009 WL 961995, at *1 (N.D.Cal.2009)).

To the extent that Plaintiffs' claims rely on the securitization of the loan, via REMIC, into a mortgage-backed security, there is no merit to the contention that securitization renders the lender's loan in the property invalid. *See Wadhwa*, 2011 WL 2681483 at *4, citing *Lane v. Vitek Real Estate Industries Group*, 713 F.Supp.2d 1092, 1099 (E.D. Cal. 2010) and *In re Macklin*, 2011 WL 2015520 at *6 (Bankr. E.D. Cal. May 19, 2011).

With regards to the defects in the Notice of Default, Plaintiffs are correct in their assertion that the Notice of Default is defective, but, as foreclosure has not yet taken place, the defect does not render subsequent steps in the foreclosure process void. The judicially noticed documents submitted to the court establish that the Notice of Default (Defendants' Exhibit G) is dated January 4, 2011, and is issued by "NDEX West, LLC as Agent for Beneficiary". (Ex. G, page 2). The Substitution of Trustee, however, (Defendants' Exhibit H) wherein NDEX is substituted for Golden West Savings Association Services as trustee, is dated January 20, 2011.

The filing of a Notice of Default by NDEX prior to its having been substituted as trustee may render the sale voidable where foreclosure sale has taken place. *Wadhwa*, 2011 WL 2681483 at *5, *Ferguson v. Avelo Mortgage, LLC.*, 126 Cal.Rptr.3d 586, 594-5 (Cal. Ct. App. June 1, 2011). However, in this case, the foreclosure has been stayed by this Court's order. At present, any sale that would take place would occur long after the substitution of trustee, and therefore would not be invalidated by the defective Notice of Default issued by NDEX.

### 4. The *Mandrigues* Settlement

The Plaintiffs, having not opted out of the settlement in *Mandrigues*, are bound by its terms. They have not articulated any reason why they should not be considered part of the class; they assert only that the issues they seek to raise in the present suit are issues which were not addressed in *Mandrigues*, and therefore should not be barred by the settlement. However, the terms of the settlement bar not only the claims made in the *Mandrigues* case, but all claims arising out of the loan at issue, its potential for negative amortization, the way in which payments were applied, and the disclosures related to the loan. To the extent that Plaintiffs' claims arise out of these issues, they are barred by the *Mandrigues* settlement.

Looking to the Plaintiffs' actual claims, it is questionable whether the Elder Abuse, Fraud, and Constructive Fraud claims would be barred–if the Plaintiffs are indeed claiming that they were falsely told the loan was a 30-year fixed-rate mortgage, the fraudulent statement made by an agent of the bank would not arise from the same subject matter as *Mandrigues*–it would be an individual act of deceit, and not an issue with the terms of the loan or the written disclosures related to the loan, which were at issue in the *Mandrigues* case. An independent lie told by an agent of the same defendant entity is still an independent act of fraud, and therefore suit should not be barred by *Mandrigues*. However, we need not reach this question, given the flaws in the fraud-related complaints discussed below.

### 5. Specificity And Sufficiency Of Pleading

#### *A. Elder Abuse*

Plaintiffs claim that the lenders involved in the origination of their mortgage took advantage of their advanced age, and knew that Plaintiffs were on a fixed income and desired a 30-year fixed-rate loan when they set up a "Pick-A-Payment" loan for the Plaintiffs, which they knew was prone to extreme negative amortization. According to the complaint, the lender entered into a fiduciary relationship with the Plaintiffs and willfully and maliciously induced them to take out a loan which, by its extremely negative-amortization-prone nature, is de facto predatory.

1    Defendants argue that there is nothing in the facts suggesting bad faith on the part of
2 the lender, and that mere extension of credit to the elderly is insufficient to support a claim of
3 elder abuse. Indeed, aside from the recitation of the elements contained in the complaint, the
4 facts do not seem to clearly establish any bad faith on the part of the lender–absent a factual
5 basis for the claim of fraudulent intent, the elder abuse allegation is defective.

6    *B. Fraud*

7    Again, there are no specific allegations of fraudulent statements in the
8 complaint–though Plaintiffs assert that "representations" were made to them which were
9 false and knowingly made with intent to defraud, they fail to set forth what was represented,
10 or what was false about it, or how they were mislead–let alone what causes them to believe
11 that the representations were knowingly made with intent to deceive. The closest they come
12 is entirely open to interpretation: "Plaintiffs decided to refinance due to the promises and
13 statements of World Savings Agent. [sic] However, the Plaintiffs requested a thirty (30) year
14 fixed rate loan, instead they were given a "pick-a-pay loan with negative amortization." The
15 implication is that the agent told the Plaintiffs that the loan would be a 30-year-fixed loan,
16 but an equally valid interpretation would be that the agent said nothing and Plaintiffs were
17 merely allowed to believe they were getting the fixed-rate loan, or, in yet another alternative
18 reading, that Plaintiffs told the agent what they wanted, and the agent may or may not have
19 responded, but ultimately got them the wrong loan–a reading where there is neither a clear
20 allegation of either a statement being made or fraudulent intent. Therefore, the fraud claim is
21 fundamentally deficient for lack of specificity.

22    *C. Constructive Fraud*

23    Here, there are the same issues as above with specificity, but the more clear-cut failure
24 of the claim is in Plaintiffs' inability to establish duty on the part of the lender. As clearly set
25 forth in *Das v. Bank of America, N.A.,* 186 Cal.App.4th 727, 740 (2010), "Under the
26 common law, banks ordinarily have limited duties to borrowers. Absent special
27 circumstances, a loan does not establish a fiduciary relationship between a commercial bank
28 and its debtor." "A fiduciary duty undertaken by agreement arises when one person enters

11

1 into a confidential relationship with another...A confidential relationship is created when 'a
2 confidence is reposed by one person in the integrity of another, and ... the party in whom the
3 confidence is reposed ... voluntarily accepts or assumes to accept the confidence.'" *Das*, 186
4 Cal.App.4th at 742, N. 9 (citations omitted). Here, there has been no factual allegation of a
5 special relationship formed which would support the element of fiduciary duty, and thus the
6 claim of constructive fraud is deficient.

### 6. Statute of Limitations

The Court need not consider the arguments raised regarding whether these claims are time-barred at present, as there is ample other reason to dismiss the claims. However, should the claims be amended and the issue arise again, the Plaintiffs have contended that the delay in filing suit was due to delayed discovery of the fraud, and also due to the fact that the fraud is ongoing–the latter point hinging on the notion that Wells Fargo has no right to the property, and efforts to foreclose upon the property without proof of right are fraudulent. The latter point has little merit, but the question of delayed discovery has not been adequately addressed at present. Nowhere in the parties' moving papers does it say when Plaintiffs discovered that their loan was not what they had believed it to be, and, without this information, the issue of delayed discovery cannot be determined.

### 7. Injunction and Stay

This Court has already granted a stay, which serves to prevent further foreclosure proceedings until the Court orders otherwise. Plaintiffs' discussion of an injunction is entirely moot, as the request for an injunction is omitted from Plaintiffs' first amended complaint, and, given the deficiencies listed above, there would be no claim on which to base the request for an injunction. However, as the Court intends to grant leave to amend some of the above claims, the stay presently in place will remain until the deadline set below for amendment of the complaint.

*Order to Show Cause*

Counsel's apologies to the Court and to opposing counsel, and explanation that he was unexpectedly required to be in another court at the time of the scheduled Case Management Conference, is sufficient cause why sanctions should not be imposed.

**CONCLUSION**

The claim for declaratory relief is preempted by HOLA and therefore DISMISSED WITH PREJUDICE. The question of preemption need not be reached for the remaining claims, as they have not been pled with sufficient specificity, and are therefore DISMISSED WITH LEAVE TO AMEND. Any amended complaint shall be filed by January 23, 2012. The Motion to Strike is DENIED AS MOOT, and, regarding the Order to Show Cause, good cause has been shown why sanctions should not be imposed.

**IT IS SO ORDERED.**

Dated:   12/6/2011

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT