IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE HAGUE, AS TRUSTEE OF THE HAGUE FAMILY IRREVOCABLE TRUST, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO BANK, N.A., et al.,<br><br>Defendants. | NO. C11-02366 TEH<br><br><u>ORDER ON MOTION TO DISMISS, MOTION TO STRIKE, AND REQUESTS FOR JUDICIAL NOTICE</u> |

This matter came before the Court on March 19, 2012, on motions to dismiss and to strike filed by Defendant Wells Fargo Bank, N.A. For the reasons set forth below, the motion to dismiss is GRANTED, and the motion to strike is DENIED AS MOOT.

**BACKGROUND**

Plaintiffs George and Nancy Hague ("Plaintiffs" or "the Hagues") borrowed $520,000 from World Savings Bank, FSB ("World Savings"), in 2007. The loan was memorialized by a promissory note and secured by a deed of trust recorded against the Hagues' home at 17656 Hillside Court, Castro Valley, California, where Mr. Hague has lived in since 1969. The deed of trust named World Savings as the beneficiary and Golden West Savings Association Service Co. ("Golden West") as trustee.

World Savings changed its name to Wachovia Mortgage, FSB, on December 31, 2007. It then changed its name to Wells Fargo Bank Southwest, N.A., before merging with Wells Fargo Bank, N.A., in November 2009. The bank is currently known as Wachovia Mortgage, a division of Wells Fargo Bank, N.A. The Court will refer to this entity, as it exists today, as "Wells Fargo."

1  Acting as an agent for Wells Fargo, NDEX West, LLC ("NDEX"), recorded a notice
2  default against the Hagues' home on January 4, 2011.[1] On February 25, 2011, NDEX was
3  substituted as trustee. NDEX recorded a notice of trustee's sale on April 1, 2011.

4  At the end of March, 2011, the Hagues received notice of a "Trustee's Sale"
5  (foreclosure) of the home, scheduled to take place at the end of April, 2011. The Hagues
6  sued Wells Fargo and NDEX in Alameda County Superior Court on April 24, 2011, seeking
7  declaratory and injunctive relief in their original complaint.

8  Wells Fargo removed the case to this Court, and on May 20, 2011, Wells Fargo filed a
9  motion to dismiss. A few days later, on May 24, 2011, the Hagues filed an ex parte
10 application for a temporary restraining order and preliminary injunction to halt a trustee's
11 sale scheduled for May 26, 2011. Nancy Hague submitted an affidavit in support of the
12 injunction stating that if the couple were forced to move, it would be disastrous for her
13 husband's health. The Court granted a temporary restraining order and issued an order to
14 show cause as to why a preliminary injunction should not issue. The Court denied the
15 preliminary injunction and the Hagues appealed. The Hagues asked the Court to enjoin the
16 sale of their home pending appeal, and in light of the fact that the Hagues had reformulated
17 their arguments, the Court granted the injunction, halting sale of the home.

18 Wells Fargo brought a motion to dismiss on May 20, 2011, and this Court granted the
19 motion, with leave to amend, on August 2, 2011. The amended complaint was filed on
20 September 19, 2011, and was dismissed on Defendant's motion on December 6, 2011. Leave
21 to amend was granted, and another amended complaint was filed on January 23, 2012.
22 Defendant now moves to dismiss this complaint.

---

[1] The Complaint is silent as to whether and when the Hagues stopped paying their mortgage. However, the Notice of Default indicates that the principal and interest became due on August 1, 2010.

2

**LEGAL STANDARD**

On a motion to dismis s, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 338 (9th Cir.1996). The Court is not obligated to accept every conclusory allegation as true; rather, it "will examine whether conclusory allegations follow from the description of facts as alleged." *Holden v. Hagopian*, 978 F.2d 1115, 1121 (9th Cir.1992) (citation omitted).

Under Fed.R.Civ.P. Rule 8(a), a plaintiff must plead her claim with sufficient specificity to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 545. Dismissal for failure to state a claim under Rule 12(b)(6) "is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir.2008).

The pleading must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009). Dismissal of claims that fail to meet this standard should be with leave to amend unless it is clear that amendment could not possibly cure the complaint's deficiencies. *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1296 (9th Cir.1998).

**DISCUSSION**

*Motion to Dismiss*

The Hagues bring seven claims against Wells Fargo: financial elder abuse, fraud, constructive fraud, wrongful foreclosure, quasi-contract, no contract, and an action to quiet title. Wells Fargo moves to dismiss all claims. They claim that the Home Owner's Loan Act

3

("HOLA") preempts all claims. They additionally argue that lack of specificity, lack of fiduciary duty, and several statutes of limitations bar the claims.

### 1. Preemption Under HOLA

Wells Fargo argues that all of Plaintiffs' claims are preempted by HOLA and its implementing regulations, including 12 C.F.R. § 560.[2] Congress enacted HOLA "to charter savings associations under federal law, at a time when record numbers of homes were in default and a staggering number of state-chartered savings associations were insolvent." *Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001, 1004 (9th Cir. 2008). The court in *Silvas* explained further:

> HOLA was designed to restore public confidence by creating a nationwide system of federal savings and loan associations to be centrally regulated according to nationwide best practices. We have described HOLA and its following agency regulations as a radical and comprehensive response to the inadequacies of the existing state system, and so pervasive as to leave no room for state regulatory control. [B]ecause there has been a history of significant federal presence in national banking, the presumption against preemption of state law is inapplicable.

514 F.3d at 1004-05 (quotations and citations omitted) (alteration in original).

Congress, through HOLA, gave the Office of Thrift Supervision ("OTS") "broad authority to issue regulations governing thrifts." *Id.* at 1005 (citing 12 U.S.C. § 1464). One of the regulations issued by OTS, 12 U.S.C. § 560.2 ("§ 560.2"), deals with preemption, and the Ninth Circuit has held that this regulation has no less preemptive effect than HOLA itself. *Id.* The regulation has three main sections – 560.2(a), 560.2(b), and 560.2(c). Section 560.2(a) provides that

---

[2] Wells Fargo contends that HOLA applies here because World Savings, which made the loan to the Hagues and later merged into Wells Fargo, was a federally chartered savings bank organized and operating under HOLA. Other courts have applied HOLA where the original lender was a federal savings bank that later merged into a national savings association such as Wells Fargo. *See, e.g.*, *DeLeon v. Wells Fargo Bank, N.A.*, 729 F. Supp. 2d 1119, 1126 (N.D. Cal. 2010); *Sato v. Wachovia Mortg., FSB*, No. 11-00810 EJD, 2011 U.S. Dist. LEXIS 75418, at *14 (N.D. Cal. July 13, 2011); *Haggarty v. Wells Fargo Bank, N.A.*, No. C 10-02416 CRB, 2011 U.S. Dist. LEXIS 9962, at *10-11 (N.D. Cal. Feb. 2, 2011); *Guerrero v. Wells Fargo Bank, N.A.*, No. CV 10-5095-VBF(AJWx), 2010 U.S. Dist. LEXIS 96261, at *8-9 (C.D. Cal. Sep. 14, 2010). The Hagues make no argument to the contrary.

4

> OTS hereby occupies the entire field of lending regulation for federal savings associations. OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation. Accordingly, federal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities, except to the extent provided in paragraph (c) of this section . . . .

12 C.F.R. § 560.2(a). Section 560.2(b) offers "illustrative examples" of state laws preempted by HOLA, and § 560.2(c) does the same for state laws generally not preempted. 12 C.F.R. §§ 560.2(b), (c). Of the specific types of state laws that are preempted under § 560.2(b), Wells Fargo argues that one is applicable to this case. Section 560.2(b)(10) states that "the types of state laws preempted by [§ 560.2(a)] of this section include, without limitation, state laws purporting to impose requirements regarding . . . [p]rocessing, origination, servicing, sale or purchase of, or investment or participation in, mortgages."

Section 560.2(c) provides that

> [s]tate laws of the following types are not preempted to the extent that they only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of [§ 560.2(a)]:
>
> (1) Contract and commercial law;
>
> (2) Real property law;
>
> (3) Homestead laws specified in 12 U.S.C. 1462a(f);
>
> (4) Tort law;
>
> (5) Criminal law; and
>
> (6) Any other law that OTS, upon review, finds:
>
> (I) Furthers a vital state interest; and
>
> (ii) Either has only an incidental effect on lending operations or is not otherwise contrary to the purposes expressed in paragraph (a) of this section.

12. C.F.R. 560.2(c).

5

### *A. Wrongful Foreclosure*

Under *Winding v. Cal-Western Reconveyance Corp.*, 2011 WL 221321, *11-12 (E.D. Cal. Jan. 24, 2011), claims arising from the transfer of negotiable instruments fall into the "sale or purchase" provision of section 560.2, making claims of misconduct arising from the transfer of such instruments in a foreclosure proceeding preempted by HOLA.

*Ahmed v. Wells Fargo Bank & Co.,* 2011 WL 1751415 (N.D. Cal. May 9, 2011) involved a substitution of trustee and a notice of foreclosure within an extremely brief period of time, as here, and, also as here, the new trustee was NDEX. *Ahmed*, 2011 WL 1751415 at *1. Like the Hagues, the plaintiff in that case alleged numerous claims, and sought to invalidate the foreclosure as defective based on the defendants' non-possession of the promissory note and the use of NDEX as substituted trustee. *Ahmed*, 2011 WL 1751415 at *1, *3.

The court found that the claims based on defects in the procedure used to foreclose the property were preempted by HOLA:

> Reading the complaint as a whole, the Court concludes that these causes of action are preempted by HOLA. These claims are predicated upon alleged improprieties in the foreclosure procedure used by defendants and therefore affect lending because they involve the "processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages," as defined in 12 C.F.R. § 560.2(b)(10). Under *Silvas*, this raises a presumption that the claim is preempted, which can be overcome only if it can be clearly shown that the claim fits within the confines of paragraph (c). Plaintiff has not done so. Accordingly, plaintiff's first, third, fifth and sixth causes of action are preempted by HOLA.

*Ahmed,* 2011 WL 1751415 at *4.

Under *Ahmed*, the actions for wrongful foreclosure, quasi contract, and to quiet title are preempted, as they are predicated, as above, upon alleged improprieties in the procedure used by defendants, and therefore affect lending by involving the "processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages." *Ahmed,* 2011 WL 1751415 at *4.

The wrongful foreclosure action is based on allegations regarding note ownership, securitization, and substitution of trustee, all defects in the foreclosure procedure used by

6

1  Defendant and therefore within the ambit of HOLA preemption. The same reasoning
2  regarding the details of this claim set forth in the Court's order on the previous motion to
3  dismiss applies, but, as HOLA preempts this claim, the Court's discussion of the issues
4  underlying the preempted cause of action will not be repeated here. The motion to dismiss is
5  GRANTED and the claim of wrongful foreclosure is DISMISSED WITH PREJUDICE.

### *B. Quasi Contract*

Similarly, the quasi contract claim is within the bounds of the above holdings, as it is entirely based on the securitization of the mortgage. While the Court is acutely aware that overly broad interpretations of what it means to "service" or "participate in" mortgages "could operate to preempt most all California foreclosure statutes where the foreclosing entity is a national lender" *(Loder v. World Savings Bank, N.A.*, 2011 WL 1884733, at *7 (N.D. Cal. May 18, 2011) (Henderson, J.)) and, furthermore, that broad interpretations could similarly preempt most all claims challenging the foreclosure process, the gravamen of the Hagues' allegations is the alleged securitization of their mortgage. The fact that the Hagues challenge the securitization of the Hagues' mortgage would falls squarely within § 560.2(b)(10)'s specific preemption of state claims that deal with "investment" in mortgages. Thus no broad interpretation of § 560.2(b)(10) is at issue here.

Furthermore, REMIC securitization (as alleged by the Hagues) does not actually remove the property interest of the party assigning the note–the purchase of the note by entities which sell securities (i.e. securitization of the note) does not alter the Note. *Wadhwa v. Aurora Loan Services, LLC. et. al.*, 2011 WL 2681483 at *4-5 (N.D. Cal. July 8, 2011). Therefore, HOLA preempts the action under quasi-contract. The motion to dismiss is GRANTED and the quasi-contract claim is DISMISSED WITH PREJUDICE

### *C. Remaining Claims Not Preempted*

The remaining claims, however, are not subject to HOLA preemption. Though Defendant argues that all claims originate from the lending practices of the bank and are therefore preempted, the nature of the claims–elder abuse and both actual and constructive fraud–are not claims which arise from the lending practices, but rather "arise from a more

7

general duty not to misrepresent material facts, and therefore do not necessarily regulate lending activity." *Becker v. Wells Fargo Bank, N.A.*, 2011 WL 1103439 at *8-9 (E.D. Cal. March 22, 2011) (internal quotations omitted).

Here, the conduct ostensibly underlying all three claims was a knowing, intentional deception of the Hagues by the bank or its agents, who knew the Hagues wanted a 30-year fixed-rate mortgage but nonetheless signed them up for the pick-a-payment loan. This is a misrepresentation of what product the Hagues were being sold, not a flawed disclosure of what the terms and conditions of the product were–in other words, the "plaintiff's claim relies on the general duty not to misrepresent material facts" and "application of the law does not regulate lending activity", therefore the claims should not be preempted. *DeLeon v. Wells Fargo Bank, N.A.*, 2011 WL 311376 at *6 (N.D.Cal. Jan.28, 2011), *see also Ahmed*, 2011 WL 1751415 at *4.

### 2. Fraud Claims

Defendant argues that the claims for fraud and constructive fraud are outside the three-year statute of limitations under California Code of Civil Procedure § 338(d). Plaintiff argues that the delay was justified because Plaintiff did not discover the problems with their loan until the payments rose, several years after the loan was initially taken out. However, in order for a delay to be excused, a plaintiff must plead and prove their lack of means of obtaining knowledge of the fraud through the exercise of reasonable diligence. *Parsons v. Tickner*, 31 Cal.App. 4th 1513, 1525 (1995). Where there existed, from the time the loan was made, papers which disclosed the terms of the loan, it would seem that reasonable diligence would have enabled Plaintiff to discover the problem. *See, e.g. Giordano v. Wachovia Mortg., FSB,* 2011 WL 1130523 at *3 (N.D.Cal., 2011). Therefore, these claims are time-barred and the motion to dismiss is GRANTED; the fraud and constructive fraud claims are DISMISSED WITH PREJUDICE.

### 3. Agency

Even absent the statute of limitations, the issue of agency presents a problem for the fraud claims discussed above, and, furthermore, presents a significant problem for the claim

8

of elder abuse. All these claims are based on the conduct of Brett Adair, the mortgage broker with whom Plaintiff interacted. Plaintiff claims that Adair was the agent of Defendant, and is bringing suit against Defendant as Adair's principal. However, in California, "[t]he law indulges no presumption that an agency exists but instead presumes that a person is acting for himself and not as the agent for another." *Walsh v. Am. Trust*, 7 Cal.App.2d 654, 659, 47 P.2d 323 (1935). Given this presumption, the burden rests with Plaintiff to demonstrate the existence of an agency relationship.

California law provides that an agency is either actual or ostensible. Cal. Civ.Code § 2298. "An agency is actual when the agent is really employed by the principal." Cal. Civ.Code § 2299. "An agency is ostensible when the principal intentionally, or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him." Cal. Civ.Code § 2300. Here, the complaint contains no facts beyond a conclusory statement that Adair was the agent of the bank. Without facts supporting the existence of an agency relationship between Adair and the bank, the bank cannot be subject to suit for the actions of the mortgage broker, and therefore the claims resting on the actions of Adair are flawed. *See, e.g. Sandry v. First Franklin Financial Corp.*, 2011 WL 202285 at *3-4 (E.D.Cal. 2011). The motion to dismiss the fraud, constructive fraud, and elder abuse claims is therefore GRANTED.

Plaintiff was given an opportunity to discuss the question of agency at the hearing held before this Court, and did not provide the Court with any additional facts suggesting these claims could be successfully amended. As such, the motion to dismiss is GRANTED, and the elder abuse claim is DISMISSED WITH PREJUDICE.

### 4. Quiet Title

When seeking to quiet title, a plaintiff must describe the property that is the subject of the action, the title sought and the basis of that title, the adverse claims to the title the plaintiff challenges, the date as of which the determination is sought, and include a prayer for a determination of title against adverse claims. Cal.Civ.Proc.Code § 761.20; *Schuck v.*

9

*Federal Nat. Mortg. Ass'n*, 2011 WL2580552, at *3 (E.D. Cal. June 28, 2011). As a preliminary matter, Plaintiff's amended complaint has not complied with these requirements.

While the above shortcoming may be amendable, the action to quite title is based on the argument that, because the bank "securitized" the loan on this property, they no longer hold the note, and, furthermore, that the profit derived from securitization resulted in the proper party to whom Plaintiff was indebted being paid in full. "Under Civil Code section 2924, no party needs to physically possess the promissory note." *Sicairos v. NDEX West, LLC*, No. 08-2014, 2009 U.S. Dist. LEXIS 11223, at *7 (S.D.Cal. Feb. 11, 2009); *see also Coyotzi v. Countrywide Fin. Corp.*, No. 09-1036, 2009 U.S. Dist. LEXIS 91084, at *53-54, 2009 WL 2985497 (E.D.Cal. Sept. 15, 2009) (same); *Lomboy v. SCME Mortgage Bankers*, No. 09-1160, 2009 U.S. Dist. LEXIS 44158, *12-13, 2009 WL 1457738 (N.D.Cal. May 26, 2009) ("Under California law, a trustee need not possess a note in order to initiate foreclosure under a deed of trust."). To the extent that the complaint relies on securitization, this position has been rejected by several courts, and Plaintiff has not provided ay authority to the contrary. *See, e.g., Lane v. Vitek Real Estate Industries Group*, 713 F.Supp.2d 1092, 1099 (E.D.Cal.2010) ("the argument that parties lose their interest in a loan when it is assigned to a trust pool has also been rejected by many district courts"); *see also In re Macklin*, 2011 WL 2015520, at *6 (Bankr.E.D.Cal. May 19, 2011) ("the fact that the Note is purchased by entities which sell securities does not alter the Note"). Because the action to quiet title is based on a theory undermined entirely by these holdings, the motion to dismiss is GRANTED and the action to quiet title is DISMISSED WITH PREJUDICE.

### 5. No Contract Claim

Though this cause of action claims not to seek rescission of the contract, but, rather, establish that the contract was void *ab initio*, California statute establishes that where there is an allegation of a contract being undermined by fraud, rescission is used to render the contract void *ab initio*. Cal. Civ. Code § 1688. There can be no rescission without tender. *See, e.g., Periguerra v. Meridas Capital, Inc.*, No. 09-4748, 2010 WL 395932, at *3 (N.D.Cal. Feb.1, 2010) (Armstrong, J.) ("Plaintiffs must allege that they are willing to tender

10

the loan proceeds to the lender. This is a basic tenet of California contract law."). There is, in California, a statutory requirement to this effect, requiring that a party "[r]estore to the other party everything of value which he has received from him under the contract or offer to restore the same ...." Cal. Civ.Code § 1691. Plaintiff, at the hearing held before this Court, could not indicate a willingness to make tender. The motion to dismiss is therefore GRANTED and the claim is DISMISSED WITH PREJUDICE.

*Motion to Strike*

In light of the entirety of the complaint being dismissed with prejudice (as discussed above) the motion to strike is moot, and need not be addressed.

*Request For Judicial Notice*

Both parties request that judicial notice be taken of several items. A judicially noticed fact must be one not generally subject to reasonable dispute that is either generally known within this territorial jurisdiction or is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Federal Rules of Evidence 201(b). The documents submitted by Plaintiff are three news articles, two of which have been released through the offices of government officials, but which are, nonetheless, press releases and pieces of journalism, and therefore not appropriate for judicial knowledge, as the accuracy cannot be readily determined. Therefore, the Court declines to grant judicial notice of Plaintiff's submitted documents.

Defendant's documents are, by and large, government-issued documents or certificates, which are readily verifiable and appropriate for judicial notice, as are the public records submitted. However, the letter submitted as Exhibit J is not within the ambit of materials appropriate for judicial notice, being neither a public record nor an easily verifiable document beyond reasonable dispute–rather, it is hotly disputed by Plaintiff, and therefore the Court grants judicial notice of Defendant's documents, with the exception of Exhibit J, for which judicial notice is declined.

11

**CONCLUSION**

For the reasons stated above, the motion to dismiss is GRANTED and Plaintiff's claims are DISMISSED WITH PREJUDICE.

**IT IS SO ORDERED.**

Dated: 3/26/12

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT